JOSEPH C. KING AND LUCINDA E. KING v. MRS. M. R. CARMODY AND M. R. CARMODY, Appellants.

**Cancellation of Deed:** EVIDENCE. A decree setting aside deeds
1 because of fraud and undue influence is warranted where it appears: That the grantors were husband and wife. That the husband had loaned seven thousand dollars to D, a son-in-law, with whom he was associated in business, but to whom he had left its entire control. That the grantee, a married daughter, who had received no assistance from her parents, claimed to be alarmed lest they should come to want, that D would never return the money he had received, that he was in poor health, was going away, and on his return would want more money. That she advised her parents to convey the land to her without consideration, so they could not loan to D, and that she would re-convey it whenever they wished. That at her suggestion her mother went with her to investigate D's business, and that afterwards the grantee claimed that the stock was run down and little business done, and wept because, as she said, D would deceive and ruin them. And that, while the grantee contended that the grantors voluntarily conveyed the land to her so that it could not be subjected to the debts of D's firm, there was no indebtedness of the firm prior to the execution of the deeds, and the husband grantor had other real property, and the wife owned over three-fourths of the land conveyed.

TAX TITLE PROCURED BY GRANTEE The fact that a part of the
2 premises was allowed to be sold for taxes in order to bar certain mineral claims, and the tax purchaser conveyed to the defendant, gave her no equity against the plaintiff except for the repayment of the consideration paid the tax purchaser.

*Appeal from Dubuque District Court.*—HON. J. L. HUS-
TED, Judge.

SATURDAY, APRIL 10, 1897.

ACTION in equity to compel defendants to re-con-
vey certain land in Dubuque county, and quiet title in
plaintiffs. Decree for plaintiffs, and defendants appeal.
—*Affirmed.*

*Matthews & Barnes* and *Bonson & Bonson* for appel-
lants.

*Lyon & Lenehan* for appellees

LADD, J.—Prior to July 6, 1889, the plaintiffs, who
are husband and wife, were owners of the forty-three
and sixteen one-hundredths acres of land in contro-
versy,—ten acres being in the name of King, and
thirty-three and sixteen hundredths acres in the
name of his wife,—and on that day conveyed it to their
daughter Mrs. M. R. Carmody. In February following,
the daughter and her husband, defendants herein,
moved on the land, and have since been in possession.
There was no consideration, and the defendants having
refused to re-convey, this action is brought to compel
them to do so. The plaintiffs allege the deed was
procured from them by fraud and undue influence
while the defendants contend that it was a gift, and
made to defeat creditors.

I.  The evidence, without conflict, shows that
Mrs. Carmody had lived with her parents up to the
time of her marriage, in June, 1888, and at that time
was twenty-three years of age. She married
against the wishes of her parents, and for some
months the intimacy with them ceased. There-
after it was renewed, and she visited them frequently.

The affairs of Mr. King were talked over freely in the
family, and she was familiar with them. Another
daughter had married C. H. Dodd, and this son-in-law
had induced King to make a loan on property in
Dubuque, for four thousand dollars, and allow him to
use it in buying goods in Chicago, and also to loan or
invest with him three thousand dollars in cash. Dodd
was engaged in mercantile business, in Tipton, and
King became his partner. King knew nothing of the
business, but left it entirely to Dodd. He was a
farmer, of about fifty-five years of age, and his wife,
about forty-seven. Mrs. Carmody had received no
assistance from her parents, and knew of
the aid extended to Dodd. The account of
the parents, and that of their daughter, of
the way the deed came to be made, differ
widely. Mrs. King testified: That Mrs. Carmody
claimed to be alarmed lest her parents come to want;
that Dodd would never return the money he had
received; that he was in poor health, was going away
and, upon his return, would want more money, and
they would loan it to him,—and advised that they
convey the land to her, so they could not loan to Dodd,
and that she would re-convey it whenever they wished.
That, upon Mrs. Carmody's suggestion, she and Mrs.
King went to Tipton to investigate Dodd's business,
and Mrs. Carmody remained in the store all day for
that purpose. That afterwards she claimed to Mrs.
King and her husband that the stock was run down,
and little business done, and repeated the statement
previously made to Mrs. King. That she wept because,
as she said, Dodd would deceive and ruin them. That
finally the parents consented, and Mrs. Carmody pro-
cured blanks and prepared the deed which was after-
wards executed. King corroborates his wife as to
conversations in presence of both, and as to what Mrs.
King told him of Mrs. Carmody's apprehensions and

request.  James King, a son, to whom plaintiffs conveyed a farm near Farley, testified that Mrs. Carmody, in urging him to take it, stated that she had agreed to return the place, and insisted that he receive the deed, because Dodd would want to borrow more money, and she and James had better take the property, to prevent him from doing so.  On the other hand, Mrs. Carmody says her father first spoke to her about living on the land in May, but that her husband would not do so without a deed; that she went to Tipton at her father's request; that on her return he brought the blanks and she drew the deed at his request; that she never asked for the deed, but received it because requested so to do by her father and mother; that the deed was made for the purpose of putting their property out of the way of the creditors of Dodd & King, that nothing was said about re-conveying it; and that the request made of James King was at the instance of her mother.  Several reputable witnesses testify that King stated to them he had given the property to his daughter; but, according to the evidence of both parents and daughter, nothing whatever was said about a gift, or from which it might be inferred a gift was intended.  The conveyance was either made to place the property beyond the reach of creditors, or beyond the possible importunities of Dodd.  But who were the creditors? The evidence fails to show any indebtedness of the firm prior to the execution of the deed, or cause to apprehend any.  During the visit at Tipton, Dodd claimed the firm was out of debt and had one thousand five hundred dollars on deposit in Chicago.  If King was placing his property beyond his creditors, he would have disposed of all at a time, or nearly so.   And yet he did not convey the land to James till the firm of Dodd & King had been dissolved, and retained property in Dubuque and a farm near

Storm Lake. Mrs. King would hardly find it necessary to convey the thirty-three acres belonging to her to avoid King's creditors. The daughter's story is inconsistent with the established facts of the case, and the claim that the deed was made to place the property beyond the reach of creditors is not sustained by the evidence. The representations, as claimed by the plaintiffs, were well calculated to mislead and deceive them. Dodd had already procured of them seven thousand dollars,—one-third of their property at least, and they were induced to believe this was lost, and that he would be sure to return for more. A conveyance would relieve them from the necessity of refusal, or at least furnish an acceptable excuse. Their apprehensions for the care of their old age were aroused. Their daughter had their confidence, and spoke to them from the standpoint of affection. The evidence warrants the conclusion that the representations were made as claimed, were relied on, and that plaintiffs were induced thereby to part with their property; and it should be restored to them.

II. It appears that King, by the advice of an attorney, arranged with D. Rhomberg to purchase a part of the land in controversy at tax sale, with the understanding that he procure a tax deed and re-convey to King. The testimony shows this to be the usual method adopted in that county to quiet title against what are known as "mineral claims." Rhomberg secured a deed from the treasurer, and, learning the legal title was in the defendant, conveyed to her. Under the circumstances, the defendant would be entitled to repayment of the amount paid Rhomberg, but could not claim title based on the tax deed, as against plaintiffs. The equities were properly adjusted by the district court and its decree is AFFIRMED.